It's good to be here, Your Honor. May it please the Court, my name is John Rasmussen. I represent the appellant here, Ronnie Steve Dooley. This case asks one basic question. Under Virginia law, what UIM limits apply to the accident that badly hurt Mr. Dooley in 2009? And in answering that question, which is under de novo review, there are six analytical steps to take. First, the base rule in Virginia, the default rule in Virginia for 40 years, has been uninsured motorist coverage stacks. The limits are multiplied by each auto on the policy unless the policy clearly, unambiguously states otherwise. That was a rule first stated in Cunningham in 1972 in Lipscomb, a case that came out the same day. In 1981, Borer said the same thing. And in the fourth and only case on the subject in 2009, the Virginia Supreme Court in Williams stated the same rule. Again, the carrier can avoid stacking, can avoid the limits combining per auto on the vehicle if it unmistakably says otherwise on the face of the policy. Here, there is a policy text where Hartford tries to limit stacking, and that is in the joint appendix at 157 and 158. You can see the actual text. But that anti-stacking text only places stacking limits on the limits shown in the declarations. If you go to the declarations of the policy, which are at page 136 and 137 of the joint appendix, there are no uninsured motorist coverage limits shown in the declaration. Hartford is going to tell you that was the result of a computer error, but why the declarations say what they do isn't an issue here. The judge did not rule on the reformation claim, which would allow rewriting the policy. He claimed to rule on the policy as written. Now, in such circumstances where the policy on its face does not provide UM coverage under settled Virginia law, starting with Bryant v. State Farm, in the Bray case that's been cited in the briefs, the UM statute, 38.22206, mandates that the UIM per person limits match the liability limits provided by the policy unless the insured rejects those matching limits. And here, there's no argument, there's no evidence there was such a rejection. So, the anti-stacking, so there's 100,000 per person UIM limits on the policy, and nothing in the anti-stacking text, nothing in the written policy terms, places any limits on stacking limits imposed by law under the statute. So the default rule happens. The default rule is the policy stacks here, it's $100,000 limits imposed as a matter of law, and three autos. So there's $300,000 in UIM coverage provided by the policy. Both the district court and Hartford refer to extensive parole evidence in their discussion. They bring up future past policies and what they said. They bring up, they have a declaration about the fact that this was a result of a computer mistake, but those issues aren't before the court now. Those would have been proper in the reformation claim, which as noted in page 200 of the Joint Appendix Note 7, Judge Wilson specifically did not rule on the reformation claim. That is an issue perhaps to be resolved. So again, the question here is not why the policy says what it says. It's the standard basic rule in Virginia. What does the policy say? What is the plain text? And here it is at least ambiguous, if not plain, because the anti-stacking provision sends you to a part of the policy, the declarations and UIM limits that aren't there. That is a rule, the plain text rule is a rule that is often used by insurance companies against insurers to find that there is no coverage and there is no reason that the plain text rule should not work both ways when we have a policy like we have here. What is wrong with Judge Wilson's analysis when he said on page 197, the statutory language controls as to the coverage provided when the policy terms are simply missing? What's wrong with that? Because the language of the statute does say the limits shall equal but not exceed the limits of the liability insurance provided by the policy. So why wasn't his analysis correct at that point? Your Honor, it's incorrect because of how the statute and the policy work together and what the policy terms are and I'll explain it. The statute imposes minimum limits if the policy doesn't have them. That's exactly correct. But it doesn't do so by modifying the declarations page or inserting limits in the policy. Well isn't there a missing limit here on the? There is a missing limit but the way that the text works in the statute, if you look at 238.2-2206A, it just says the limits must match. It doesn't say the declarations on the policy must show this amount or the declarations are deemed to have shown this amount. It just says the policy is presumed to have applied this amount. And here all of Hartford's anti-stacking eggs are in the one basket of referring to limits that are in the declarations when there are none. And even assuming this is an error, which is not really before the court at this point, assuming that's an error, that has policy effects going forward because an insured is supposed to be able to look at their policy and figure out what they're presumed to have read it. So an insured could not read this policy and figure out that they had any UIM limits. And if they had been in an accident and looked at their policy to see, well, an uninsured driver hit me, how much coverage do I have? They could see that there's no limits there and give up. But it has bodily injury liability limits. It does. It absolutely has liability limits. And then if you read that in conjunction with the statute that says that the uninsured motorist coverage limit shall equal but not exceed the limits of liability coverage, why doesn't that supply, as Judge Wilson said, why doesn't that supply the missing element here? Your Honor, because the anti-stacking text only puts limits on, only puts stacking limits on the limits shown in the declarations and there are none shown there, there are none visible, there are none that can be seen. The anti-stacking text does not say something like. Give us the appendix site on that. The site for. Anti-stacking language. It's 156 and 157 of the joint, or 157 and 158 of the joint appendix, Your Honor. Okay. It's at the bottom of the first page and the top of the second. Right. It says the limit of bodily injury liability shown in the declarations. Correct, Your Honor. For each person for uninsured motorist coverage. And the declarations, even if the mandatory provisions of the UN statute are imposed, they don't change the limits by changing the declarations. They change it by just saying you have to provide matching limits. You know, a way this often comes up, Your Honor, a way that statute is often applied is where the insured has lower limits than the liability limits, but has never filled out a proper rejection. It doesn't really come down to, in this case, whether there's an ambiguity or whether there's a missing element. Your Honor, I would argue that there are both here. There is. Well, there's an element that should be there. The ambiguity. The ambiguity is. The cases that talk about, the Virginia Supreme Court cases that talk about allowing stacking, talk about an ambiguity. Do they not? Correct, Your Honor. In fact, the Williams case is. So where is the ambiguity here as opposed to the missing element required by law? The ambiguity is the anti-stacking text in the policy and the policy has to unambiguously limit stacking. The only limits it uses to limit stacking are the limits shown in the declarations. It does not use language like the stacking of the limits available under the policy or imposed by law are prevented from stacking. It doesn't say any of those things. It says the only thing that determines whether limits are stacked or not is what is shown in the declarations and nothing is there. I would argue it's at least an ambiguity per se for a policy to tell its reader, especially a layperson, look to the section to find out what your limits are. And if there's nothing there, that I would argue is a patent ambiguity, which is also discussed in the brief. The differences between a latent and a patent ambiguity. A patent ambiguity is obvious on the face of the policy, which this one is. There is an anti-stacking text that tells you to look to a place in the policy that doesn't exist. And you have to unambiguously prevent stacking from occurring through text in the policy on the face of the policy. And the policy does not do it. I don't think it does any job, but certainly not an unambiguous job of showing that the limits don't stack. They could have had language that had said what we are going to pay is limited to the liability amounts available under the policy. That doesn't use the word declarations. It doesn't purport to depend on the declarations. Or they could have said we also are limiting stacking of limits that are imposed by law. It doesn't say that. It just says limits shown in the declarations. And under the plain language of those terms, shown means be visible. And visible means able to be seen. And there are no limits that are able to be seen anywhere in the Hartford policy for UM coverage. I think this is an issue that's summed up well in a quote from the opposition brief at page 15, where they say there is just no provision in the policy in which any way harbors the possibility that UIM limits could be stacked. And that misses the rule here in Cunningham, Lipscomb or in Williams. The default rule is limit stack. And it's the insurance company's job to show the limits don't stack. And I think Williams provides a perfect example of that in the Williams case. There was an ambiguity on the face of the policy, wasn't there? Absolutely. Because there were different limits listed. I agree that that's what makes this case like the Williams case, because the ambiguity here is it sends you to a part in the policy that does not exist. And that's an inherent conflict in the text. Well, Williams, the policy didn't send you to a place that didn't exist. It just listed different coverage amounts. Correct, Your Honor. For each person, didn't it? Correct, Your Honor. In that case, there was, I believe it was 250, 250, and 300 in three different places. And it was the different numbers. Here, there's not even a number, which I would argue is just as ambiguous as sending you to a place that has multiple numbers. And the language is almost the same in Williams. It sends you to the declarations or to a schedule. There's nothing in the schedule to show the limits. It's not like the Bora case. But there was no, in Williams, the different vehicles had the different numbers, right? Correct. There were three vehicles. It actually wasn't a number. It was an asterisk under a number, but it was references to three different numbers, or two different numbers, one of which was stated twice. So I guess this case all comes down to, doesn't it, whether this is an ambiguity or a missing element supplied by statute. And if it's a missing element supplied by statute, Your Honor, I would argue that the anti-stacking text does nothing to limit stacking of missing elements that are imposed by law. It only limits stacking to what's in the declarations. My time is almost up. Unless you have more questions, I will save the rest of the time for rebuttal. Thank you, sir. Thank you. Mr. Mumford? May it please the Court, John Mumford for the Hartford. You pronounced my name perfectly. The argument focuses, with respect to the anti-stacking clause, on four words of that clause shown in the declarations. In the policy declarations that, unlike prior years, didn't have a box with UIM limits. And just, we're not arguing the reformation issue. The judge didn't apply or analyze the reformation issue in his decision. He applied the policy as it was written before him. But looking at those four words in the declarations, they don't create this state of ambiguity that the appellant claims. First, even if we take their narrow construction of just looking at four words and not looking at the policy as a whole, the UIM limit is shown in the declarations. Because under Virginia Code Section 38.2-2206A, where the policy does not state a separate UIM limit, the UIM limit is automatically, by operation of law, the same as the liability coverage limit. Right, but what he's saying is the ambiguity is in the anti-stacking language read together with supplying the missing element in the statute. He said, okay, even give, let's give you the fact that there isn't an ambiguity created by the missing element. He's saying when you consider that in conjunction with the anti-stacking language, which refers to the limit of liability shown in the declarations, then you've got to have an ambiguity. Right, but under Duncan and Bray and this court and the district court's application of those, that limit is a part of the policy. In the policy itself, actually. So Duncan and Bray say, and the district court applied here, that Virginia's UIM statute, including this limits matching provision, including the provision that says your UIM limit is your liability limit. Your case then boils down to once the law supplies the missing element, there is no ambiguity because the anti-stacking provision properly refers to the limit of liability. You put it much more articulately than I could, but that is exactly it. But the statute doesn't place it in the declaration. It just says that it should match. That's a one-sided, wasn't that to protect the insured? The policy itself tells you, the policy says in the UIM coverage form, that this coverage is afforded under 38.2-2206. The policy itself incorporates the statute. In the Duncan case that the Virginia Supreme Court had. Yeah, but it's one of those things like it used to be in Virginia law, if you settle a case with a joint tort fees and you didn't do it exactly under Virginia statute, you may lose the whole case because it had to be done clearly by statute. Here the default is that you can stack. And you put the language in. You didn't say that's found in the policy. You wrote that's found in the declaration. At best you can say the statute might say the policies would match, but you say you live and die by your own words because it's strictly construed. In the declaration there is none. Where in the statute does it say this shall be incorporated in the declaration? The declarations have a limit for the liability limit. Yours didn't though. It did. It has a liability coverage limit in the policy. For UIM? For the liability coverage. Okay, for liability. That's right. Correct. It has a liability coverage limit. So if you have the words shown in the declaration and the policy holder goes to declaration, there's one limit. By operation of law the policy tells you because the statute tells us that the liability limit equals the UIM limit. So even under a strict looking at it where we narrowly focus in on the words shown in the declarations, that's the number. The number is shown in the declaration. It is both the liability limit and the UIM limit at the same time. But it's not shown. It is shown. It's $100,000 each person. But the UIM is not shown. It's not. It is shown when we go back when the statute is there because it's shown in the declarations. It is there. It says $100,000 each person, $300,000 each accident. What is missing from the declaration? What was not from the prior year? From the prior year there is not a UIM box. Right. So it doesn't state a UIM limit, correct? I disagree. I would say it does state a UIM limit because by operation of law the policy tells us. We can go to the policy and the policy tells us. The plain language of state is states, not incorporated by reference. State is plain. It means it states it. Does it state one or not? Yes. It does not. Does it? No. Where is it stated? It's plain language. Where on the page do you read the UIM coverage in the declaration page? Where it says the liability coverage limit. $100,000 each accident, $300,000. $100,000 each person, $300,000 each accident. That's where it states it. That's stated for the UIM. That is stated as a liability coverage limit. As for the UIM. By operation of law.  I can see it. There's no box like there was in the prior year. So the answer is no, it doesn't. But that then takes the statute that implies by operation of law. It takes the policy provision that says the statute's in the policy and throws it away. Because we don't look at this. But this law wasn't meant to help you prevent insurers from stacking. It was only to make sure that it would match the coverage. You're using it to help a defective anti-stacking problem. But this law wasn't meant to make stacking either. As the cases since Williams have shown us. Stacking was assumed, unless you specifically do it correctly. Right, but every single case decided since Williams. And there's been a lot of them across the state. Every single one of them have recognized. A nuance or even an error in a policy doesn't automatically mean stacking. If, in the words of the Williams Court. The anti-stacking provision when construed in the context of the entire policy. Tells us that there's no stacking. So we don't hone in on one thing. Under Virginia law. The Williams Court was clear on that. The Williams Court said quote. Provisions in an insurance policy must be considered and construed together. And any internal conflict between provisions must be harmonized. If possible to effectuate the party's intent. The Williams Court tells us. That the anti-stacking provision is not viewed in isolation. But must be construed in the context of the entire policy. And here we have a policy. That tells us. Because one the policy says it's affording coverage. In accordance with 38.22206. And two because that statute is. As this court held in Bray. And the Duncan Court has told us. Is in the policy by operation of law. And that statute tells us. And it tells us. That the liability limit equals the UIM limit. In this case where we don't have one. They equal each other. So when we go to and see shown the declarations. Construing those together. It's not a dead end. We have an answer. The number is there. And especially when it's construed as a whole. Which Virginia law requires. It is there. And this is not the Williams case. Williams had two different limits. Stated in the declarations. Among three vehicles. None of which were in the policy. I'm sorry. None of which were involved in the accident. So the court. Couldn't determine which limit to apply. So they applied them both. Here everyone agrees. That there is a one million dollar. UIM limit. Which is the same as the liability coverage limit. I'm sorry. One hundred thousand dollar limit. And the policy is replete with indicators. That that can't be stacked. There's even a separate anti-stacking clause. That applies to the liability limit. So we have two different anti-stacking clauses in the policy. One that applies for the UIM limit. And one that applies for the liability coverage limit. Where the liability coverage limit of the policy. Can't be stacked. Because of this other anti-stacking clause. Then where's the basis. To stack the UIM limit. When that limit is applying by operation of law. As the same as the liability limit. Do you have a case where we have allowed anti-stacking. Where you have to go beyond the language and anti-stacking. And the policy itself. To effectuate. Because you have to use the statute to do it. Here. Right. Do you have a case where you. You can't normally. By looking at the policy. And the anti-stacking language. Here. Don't you have to go beyond those two. No. Because the statute. I don't mean this in a simplistic way. But the statute is part of the policy. The holding in Bray. And the holding in Duncan. And it's applied by the district court. But the statute is part of the policy. Duncan involved a case. Where Duncan. In Virginia. Under the Virginia UIM statute. The policy seeking UIM coverage. Has to physically serve a lawsuit. On the carrier. In order to preserve their coverage. And they came and said. My policy didn't say that. I as a policy holder. Didn't know I had to do that. And the court said. That's unfortunate. But this statute. Is as much. As much. As a part of the policy. As if it's stated therein. And in this case. We even have one more. Link. In that the policy. Itself states. This coverage. Your UIM coverage. Is afforded in accordance. With Virginia code section. 38.2. 2206. What about the parole evidence. That the court accepted. It wasn't. The court. In a discussion. Of how we got where we were. Said that. The. The. That this happened. Because of a computer error. That had nothing to do. With the court's analysis. The court analyzed. The policy. As. It was written. The court said it was inadvertent. How did the court find that. That was inadvertent. Without considering that. There was no. There's no evidence. Before the court. Otherwise. You know. There's no evidence. Before the court. That it was purposeful. You know. The only explanation. Before the court. At the time. Was that. It was computer error. And the court. And the inadvertent. Or not inadvertent. Played no. Role whatsoever. In the court's decision. The court only applied. The policy. As it was delivered. With no UIM box. And applying on top of that. The Virginia. UIM statute. Again. You're working through the policy. The Virginia law. Is clear. In the UIM context. That. There is. We take the anti-stacking clause. And we don't look at.       As a. As a. As a. As a. As a. As a. As a. As a. As a. As a. As a. As a. As a. As a. As a. As a. As. A.   As a.  A. As a.       Unquote. Unquote. Unquote. Unquote. Let's be clear. We we. We the. Natural result. Of a proximity. Violence. And and we. A unknown entity.   Unquote. Unquote. A re s.          In unquote. Unquote. A low. In unquote. A low. In unquote. A low. In unquote. Unquote. Thank you, sir. Appreciate it.  Mr. Rasmussen. Thank you, Your Honor. Mr. Rasmussen, I have been spending some time reading the statute since you last sat down. Yes, Your Honor. Why doesn't your position violate the statute? Because the statute says those limits shall equal but not exceed the limits of the liability insurance coverage policy provided by the policy. And the anti-stacking language validly stacks the language, validly stack, validly prohibits, excuse me, stacking of the liability coverage. So if we were to allow stacking under your theory of the U.M. coverage, why don't you have a statutory violation? Because the U.M. limits would exceed the limits of liability insurance provided by the policy, contrary to the express provision of the statute. Your Honor, I do have an answer to that, and it's two parts. The first is the U.M. statute says that the per-person limits must match the per-person limits for the... So you can't have more, under the Virginia statute, you can't have more uninsured motorist coverage than you can have liability coverage. Isn't that correct? Your Honor, it's true the statute says that. Right, but that's what you're asking from us today. You're asking for more U.M. coverage than you are entitled to liability coverage under the policy, are you not? Your Honor, I would say that I'm asking for the same per-person limits, and the per-person limits are... Right, but you have to be, you are asking for more U.M. coverage than the policy allows for liability, are you not? Your Honor, if that was the case, then that part of the statute has remained essentially unchanged for decades. That part of the statute has been part of the U.M. statute or its predecessor since Cunningham and Lipscomb were decided in 1972. It was certainly part of the U.M. statute in 2009 when Williams was decided. Right, but that wasn't the issue. I mean, I was there in Williams, as you know. As I know. That wasn't the issue in Williams. But if that were the case, stacking would never be allowed, even in the Williams case, because you are getting more total aggregate U.M. limits than the matching limits would have been. Stacking wouldn't be allowed in any case. Well, I guess they would. They would have been allowed in Williams because they didn't have the adequate anti-stacking language, did it? Your Honor, in Williams, though, the liability limits were the same as the U.M. limits that were there. And they still allowed stacking. They did not rule that you weren't allowed to stack because it exceeded the limits. Right, but that was because of the variations in the limits for the different vehicles. But the Williams court still resulted in there being more liability limits, more in U.M. limits than were provided for liability. The most that was afforded for liability purposes was, in that case, I believe, $300,000. And so the insured, in that case, ended up getting more in U.M. coverage than they would have gotten in the policy-provided liability coverage. I would argue that I understand Your Honor's argument. If you were to follow that through, then Cunningham, Lipscomb, Board, and Williams wouldn't apply. Just a second. So your argument, then, is that when the statute says that, all the statute is saying is the policy cannot provide on its face greater U.M. coverage than coverage for liability. Exactly right, Your Honor. Okay. That's exactly the... But it doesn't prohibit the aggregate of the stacking. Correct. Right. It doesn't prohibit aggregation. It prohibits what the limits are. Now, one of the most important... Does that affect your claim here? I do not believe it affects our claim here because we are just asking to aggregate the limits that are imposed as a matter of law. One standard rule, and Judge Gregory touched on this in Virginia, is every word in a policy must be given effect. That's a basic law. PMA Capital stated it at 626 Southeast 2nd, 372. And what Hartford is asking to do here, especially in their argument that we should look to the liability limits, is trying to read out of the policy this phrase that Justice Gregory referred to, the limit of bodily injury coverage shown in the declarations for each person for uninsured motorist coverage is our most we will pay. So it's not just the limit shown in the declarations that the anti-stacking text refers to. It refers to the limit for uninsured motorist coverage. The bodily injury limit for liability coverage is not referenced in the uninsured motorist coverage anti-stacking text. There is a separate anti-stacking provision for liability coverage that has no bearing on the UM that applies here. And as pointed out by the court, applying the plain meaning of words shown as cited in my brief from the dictionary means to be visible. And visible means able to be seen. And there is nothing able to be seen to show UM limits. And that is what the reference in the anti-stacking text is to. And again, this is the default rule in the state. This is a rule that applies unless an insurance company unambiguously provides text in the policy to the contrary. It has not done this here. It points to the limit shown in the declarations for uninsured motorist coverage. There is no limit there. The limit is imposed by law. Nothing in the anti-stacking text does anything other than limit the limits shown in the declarations for stacking. It does not mention liability limits. It does not mention limits imposed by operation of law. So we would argue that the case should be the judgment should be reversed and the case should be remanded for the remaining reformation issue.  Thank you, sir. We'll come down in Greek council and adjourn in court. Sine die. This honorable court stands adjourned. Sine die. God save the United States and this honorable court.
judges: Robert B. King, Roger L. Gregory, Barbara Milano Keenan